Bachtel, In re.

## BANKS—EMBEZZLEMENT—HABEAS CORPUS.

[Stark (5th) Circuit Court, June 18, 1905.]

McCarty, Taggart and Donahue, JJ.

*CORWIN D. BACHTEL, IN RE.

1. HABEAS CORPUS LIES TO DETERMINE JURISDICTION OF COMMITTING COURT.

A writ of habeas corpus lies to determine the jurisdiction of a court un-
lawfully restraining petitioner of his liberty, but errors of the trial court
cannot be reviewed in such proceedings.

2. ACT 76 O. L. 74 HELD CONSTITUTIONAL.

Act 76 O. L. 74, amending and supplementing acts 49 O. L. 41 (Lan. Rev.
Stat. 6199; B. 3821-85), the free banking act, comprises only banks created
under this act, and is not unconstitutional as being a law of general
nature without uniform operation. But even if such amendatory act
were unconstitutional, the corresponding section of the original act
would not be repealed thereby and would remain a valid and constitu-
tional act under the provisions of which one offending may be prosecuted.

[Syllabus approved by the court.]

QUO WARRANTO.

C. C. Upham and J. W. Craine, for the state.

C. D. Bachtel, V. P. Kline, W. A. Lynch and Webber & Turner,
for defendant.

### DONAHUE, J.

The petitioner, Corwin D. Bachtel, in his petition in habeas corpus
presented to the judges of this court claims that he is unlawfully re-
strained of his liberty by the sheriff of Stark county, Ohio, and prays
an order discharging him from such imprisonment. It appears by
the sheriff's return that the petitioner was indicted by a grand jury
of Stark county for a violation of Sec. 30, 76 O. L. 74 (Lan. Rev. Stat.
6199; B. 3821-85), and in default of bail was committed to the jail of
said county until trial could be had upon said indictment.

The petitioner claims that the indictment is invalid and that the
court of common pleas of Stark county has no jurisdiction thereof, for
the reason that the section, under favor of which the state is attempting
to prosecute the petitioner, is unconstitutional and void, because it is
in violation of Art. 1, Secs. 1 and 2 of the bill of rights, and of Art. 2,

*Affirmed by the Supreme Court of Ohio, without report, *Bachtel* v. *Wilson*,
74 Ohio St. 524; leave to file a petition in error in the United States Supreme
Court refused, *Bachtel* v. *Wilson*, 15 O. F. D. 457 [204 U. S. 36; 27 Sup. Ct.
Rep. 243; 51 L. Ed. 357].

Stark County.

Sec. 26, of the constitution of Ohio, and of Sec. 1 of the fourteenth amendment to the constitution of the United States.

It is contended by the state that this court ought not to entertain this petition in habeas corpus at this time, for the reason that it appears by the return of the sheriff that the prisoner is in the custody of the common pleas court of Stark county in which court said criminal prosecution is pending; that he has already filed a demurrer to said indictment, raising the constitutionality of said sections, upon which demurrer that court has held adversely to his claim, and that he ought to be required to follow in the regular course and prosecute error to this court, when it would appear, if it should ever appear, that the holding of the common pleas court upon this demurrer was prejudicial to the rights of the petitioner. With this contention in the abstract we are in accord. We think this is the better practice, and one that ought to be insisted upon by all reviewing courts, for it is not the purpose of habeas corpus to bring before a reviewing court errors of the trial court. There is another plain and adequate remedy at law provided for that purpose. But when a petitioner files his petition in habeas corpus, averring that he is unlawfully restrained of his liberty and attacks the jurisdiction of the court issuing the warrant or order for his commitment, we think it is the policy of our law that the question of jurisdiction should be heard, although all questions of mere error or irregularity will not be heard upon such petition, but solely and alone the question of jurisdiction of the court issuing the writ or order of commitment.

In determining the question raised, then, upon this petition in habeas corpus, to wit, the constitutionality of the act under which prosecution is brought, it is necessary to determine whether the language of the law itself raises any doubt as to its constitutionality. The three objections urged to the constitutionality of this act are kindred in their nature, and many of the reasons urged by the petitioner why it is in violation of Art. 2, Sec. 26 of the constitution of Ohio are practically the same reasons urged by him as to why it is in violation of Art. 1, Secs. 1 and 2 of the bill of rights, and also Sec. 1 of the four-teenth amendment to the constitution of the United States. In fact the questions raised here by counsel for the petitioner are comprised in the contention that the law is not of uniform operation throughout the state, and for that reason violates all of these constitutional provisions.

Turning first to the law itself we find this comprehensive language used, Sec. 30: ''Every president, director, cashier, teller, clerk or

Bachtel, In re.

agent of any banking company,'' etc. It is insisted by petitioner that this language does not include many other individuals similarly situated in their business relations to the public, because the words ''any banking company'' can only refer to banks organized under what is known as the free banking act of this state, passed in 1851, and that such officers of all other banks are not amenable to this law, notwith-standing their occupation and duties are identical with the occupation and duties of the officers of such banks, and that by reason thereof the law is not uniform in its operation. The presumption, of course, is that this law is constitutional, and it must clearly appear that it is not before a court is authorized to declare it unconstitutional.

In the case of *Slingluff* v. *Weaver*, 66 Ohio St. 621 [64 N. E. Rep. 574], the Supreme Court say:

''But the intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction.''

If that doctrine is to be applied to the question here presented it is an end to this contention, for taking this section alone, without reference to its position in the chapter in which it is found and without reference to its history, it clearly appears that it comprises all banking companies in the state of Ohio, and, therefore, the objections urged by the petitioner do not obtain.

But upon the theory that each section of the law must be construed *in pari materia* with other sections applying to the same subject-matter, then it might fairly be said, in contemplation of the whole chapter, that there is a doubt appearing as to whether it includes all banking companies, or simply the banking companies organized under the free banking act, and, therefore, it may become necessary to investigate the history of this legislation for the purpose of determining to what char-acter of banks the act does apply.

Coming, then, to these considerations, we find that on April 24, 1879, there was in force and effect what was then known as the free banking act, passed March 21, 1851, Sec. 30 of which was substantially in the language of Secs. 3821-85 Rev. Stat., except as to the omission in the later act of various provisions of that section relating to putting

*in circulation* notes and circulating bills of such banks provided for in this act; and upon said date the legislature of Ohio passed an act entitled "An act further to amend the act entitled an act to authorize free banking, passed March 21, 1851 (49 O. L. 41), and the acts amendatory and supplementary thereto." And Sec. 6 of this amendatory act is an amendment of Sec. 30 of the original act and such amendment is now Sec. 3821-85 Rev. Stat. Counsel, however, insist that these sections relating to the free banking act never became a part of the Revised Statutes of Ohio, and we use that term for convenience at this time, and for the further purpose of designating where they can be found conveniently, and not intending to determine whether they are a part of the Revised Statutes or not. They are at least part and parcel of the statute law of Ohio and as such we are now dealing with them.

To determine whether the phrase in the amended Sec. 30, "any banking company," applies to all banking companies of the state, or only banking companies organized under the free banking act, it is necessary to refer only to the title to this act, which distinctly avers that it is an act further to amend the act entitled an act to authorize free banking, passed March 21, 1851 (49 O. L. 41), and the acts amendatory and supplementary thereto; so that the conclusion necessarily follows that the legislature at this time had not in contemplation any other kind or character of a banking institution except those contemplated in the act of March 21, 1851, and that nothing contained in this amendatory act was intended by the legislature, or by any fair construction thereof, could be held to include any other banking company, except the ones provided for in the original act, including those in existence or any that might come into existence under the provisions thereof during the time that said act might remain the law of Ohio.

It appearing then that Sec. 6 of this amendatory act, 76 O. L. 74, which is now found under the sectional numbering 3821-85, must be held to include only banking companies organized under the provisions of the original act which this act amended, or sought to amend, the next question arises as to whether or not the classification therein attempted is imperfect, false or unnatural, and that such classification is resorted to by the legislature for the purpose of giving a special law the appearance of a general law, to evade these constitutional limitations of the power of the legislature.

The Supreme Court has repeatedly held that the legislature has the power to classify, and that the legislative authority of this state is

Bachtel, In re.

vested in the general assembly in the broadest terms, by Art. 1, Sec. 1 of the constitution, subject only to the limitations elsewhere found in the constitution. It is, therefore, not within the province of any court to declare void, and annul, a statute by reason of a supposed violation of the principles of justice and common reason, if it be within the bounds of constitutional power. The courts have nothing whatever to do with the policy, the justice, or the wisdom of a statute so long as it cannot be said that it contravenes some constitutional provision.

Again our Supreme Court has said in the case of *Cincinnati St. Ry.* v. *Horstman*, 72 Ohio St. 93, at page 107:

"We do not accept without qualification the postulate of the court below, that 'classification cannot be made arbitrarily by the general assembly by seizing upon any incident or characteristic that may suit its purpose.' And again at the bottom of the same page, 'where a false and unnatural classification has been resorted to' " that courts will interfere.

As a premise to the petitioner's contention here we are asked to take judicial notice of the fact that there are only a very few such banks in Ohio that come within the contemplation of this section, but it is very doubtful to us whether this contention is correct or not. Certain it is not of universal knowledge, for it is doubtful if one man in a hundred or even in a thousand of the population of Ohio has such knowledge. But though it may not be of common knowledge, yet if it is a matter that may be of common knowledge by reason of authorized statistics within the reach of every man who cares to investigate, then it is a matter of which courts will take judicial notice. That does not so clearly appear in this case; yet conceding all that counsel claim for it in that behalf, what is the result? That there are some such banks existing is admitted. That there may be tomorrow, next year or the year after a great many more is also within the contemplation of this statute, and was necessarily and properly within the contemplation of the legislature at the time it passed this act and, therefore, having conferred privileges in this very banking act it had a right to impose penalties and restrictions and to classify them as a distinct and separate organization, distinguished from other banks and differing from other banks in their relation to the state and to the public at large. The first inquiry is whether or not there is such a class existing in Ohio. The number within that class is to our minds of little or no importance. If there is such a class, that is sufficient for the purposes of this case. If there are banks organized under this particular act, if other banks may be organized under it, if the

privilege of organizing banks thereunder is and has been open to the people of the state, and there is an entire chapter of our laws devoted to the rights, liabilities and obligations of this character of bank and penal statutes in reference to misconduct of officers thereof, how can it be said that such a bank and such officers are not a distinct and separate class of banking institutions? There are undoubtedly a great many reasons that may be urged why all banking companies in Ohio should be included within the provisions of this section. In fact, to our minds, there is no valid objection thereto and every argument that presents itself to our consideration is in favor thereof, but we are not the legislature, and as has been said by the Supreme Court in *State v. Nelson*, 52 Ohio St. 88, 99 [39 N. E. Rep. 22; 26 L. R. A. 317], "that if the legislature has erred in not including what has been excepted from the operation of the law, it is simply an error of judgment in the exercise of its authority and cannot be reviewed by the courts." So that the remedy must be sought in the legislature itself. In order that a law of a general nature shall have uniform operation throughout the state, it must apply, first, territorially to the entire state; second, to all individuals coming within the class designated by the legislature. And the power to make this classification is not only expressly but of necessity lodged in the general assembly of the state, for there are few laws upon our statute books that necessarily affect every individual, but rather the great majority of our laws applies to individuals of a certain class.

Again on page 99 in the case of *State v. Nelson, supra,* Judge Burket, who announced the opinion in that case, says:

"Very few statutes apply equally to every person in the state. Some apply only to males, some to females, some to minors, some to persons of unsound mind, some to office holders and some to criminals. As pointed out by Minshall, J., in *Adler v. Whitbeck*, 44 Ohio St. 539 [9 N. E. Rep. 672], such classes are arbitrarily formed by the general assembly, and 'if the legislature has erred in not including what has been expected from the operation of the law, it is simply an error of judgment in the exercise of its authority, and cannot be reviewed by the courts.'"

Further, on page 100, quoting *New York Elevated Ry. In re,* 70 N. Y. 327, 351, Judge Burket says:

"And does the validity of a law which is required to be general, and which is general in its terms, depend upon the number of subjects upon which it can operate, or upon the size of a class to which it applies? These questions must be answered in the negative."

Bachtel, In re.

We are of the opinion, from the reading of these authorities, that the legislature has a right to make such classification, and it is only when it appears that the classification attempted by the legislature is false and unnatural that courts ought to interfere, and if there is doubt in this behalf it must be resolved in favor of the constitutionality of the act. We are, therefore, of the opinion that the act in question does not violate any of the provisions contended for by the petitioner.

But even if we are mistaken about that, if this Sec. 6 of the amendatory act of April 24, 1879, is unconstitutional, it does not necessarily follow that the petitioner is entitled to a discharge. The original act of March 21, 1851, was passed before the adoption of the constitution of 1851, and, therefore, at the time of the adoption of such constitution was a valid and subsisting law of the state of Ohio, and it remained the law of Ohio and is still the law of Ohio, unless it has been repealed by a valid act of the legislature. This original Sec. 30 prohibited the acts complained of in this indictment, and but for Sec. 6 of the amendatory act an indictment could be returned and prosecuted under the original act for the commission of acts therein charged. So that if the contention of the petitioner that this Sec. 6 of this amendatory act is unconstitutional, then it follows as a corollary that original Sec. 30 is still in force, having never been repealed by a valid act of the legislature. We think the question is no longer an open one in Ohio, that where the legislature have enacted an unconstitutional amendment and in the same act repealed the original constitutional law, but the repealing clause must fall with the attempted amendment, and to all intents and purposes the law remains the same as if no such amendment had been attempted by the legislature.

In the case of *State* v. *Hall*, 67 Ohio St. 303 [65 N. E. Rep. 1019], the Supreme Court in the second paragraph of the syllabus declares, "The repealing section of said act is also void," and on page 306 the court say, and this opinion is rendered by the court: "The amending act of April 30, 1902, including its repealing section, is wholly void, and Sec. 1240 Rev. Stat., stands as though such amendment had not been attempted." This is but following a long line of decisions in Ohio upon this subject.

In *State* v. *Jones*, 66 Ohio St. 453, 482 and 483 [64 N. E. Rep. 424; 90 Am. St. 592], Judge Shauck announcing the opinion of the court, says:

"Applying to the case a doctrine with which the lawyers of the state are quite familiar, the repealing section of the present act is

inoperative unless its provisions for reorganization of the board are valid. The system provided by the former legislation being still in full operation, it should continue, unless, by a valid act, a system to succeed it has been provided.''

In State v. Buckley, 60 Ohio St. 273 [54 N. E. Rep. 272], the court say:

"The said section being inoperative, the repealing section contained in the same act is also inoperative, and this leaves said Sec. 2926b, as amended April 28, 1890, 87 O. L. 359, in force.''

In State v. Smith, 48 Ohio St. 211, 219 [26 N. E. Rep. 1069], in the opinion of the court we find the following language:

"We see no other valid objection to the law. And as the act itself is invalid, the repealing clause must also be held inoperative, as we cannot suppose that the legislature would have repealed the act creating the board of city improvements, without providing any substitute therefor.''

Counsel for petitioner make the contention that, under this doctrine announced in State v. Smith, supra, there would be no reason for reinstating an act, when the old law in all material respects is just like the new one; that there would be neither sense nor justice in reinstating old Sec. 30 with its archaic provisions as to paper money after the power to issue it had been taken away. There is, no doubt, much logic in this reasoning, but it does not apply to the principle involved here. The question is not as to the reasons and purposes for reinstating such law, but the principle underlying this question is that the invalid act did not affect the valid one that it attempted to repeal, and the court is not now reinstating this act, but would be simply finding that there was no valid act that effected its repeal and that it remains the law of Ohio, because it has not been repealed by any valid enactment of the repealing power of the state. So that we are not concerned as to the reasons why it should or should not be reinstated, for we are not reinstating it, but merely determining that no law of the state is repealed by an unconstitutional enactment of the legislature of Ohio purporting to repeal the same. For this reason, even though all the other contentions of counsel for petitioner be correct, the common pleas court has jurisdiction of the cause, and there is a valid constitutional law under which this prosecution is proceeding, and the petitioner is not unlawfully deprived of his liberty, and must be remanded to the custody of the sheriff, and such order is accordingly made at the costs of the petitioner and his exceptions are here noted.

**Taggart** and **McCarty, JJ.,** concur.